IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TONYA D.[1], ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:20-CV-777 |
| ) | |
| KILOLO KIJAKAZI[2], Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tonya D. ("Tonya") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Tonya alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) account for the impact of obesity on her residual functional capacity ("RFC"); (2) perform a function-by function analysis; and (3) assess her subjective allegations. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 18) and **DENYING** Tonya's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Tonya failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Act.³ <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (quoting <u>Craig v. Chater</u>, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." <u>Biestek</u>, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

**CLAIM HISTORY**

Tonya filed for SSI benefits in May 2018, claiming that her disability began on May 14, 2018. R. 15.⁴ The state agency denied Tonya's claims at the initial and reconsideration levels of

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

⁴ Tonya filed a prior claim for SSI benefits on May 7, 2014, which was denied by ALJ decision on August 10, 2017. R. 246–56. Tonya appealed that decision, and this Court affirmed the ALJ's decision on August 6, 2019. <u>See</u> <u>Tonya D. v. Saul</u>, No. 7:19-cv-242, 2019 WL 4741249 (W.D. Va. Aug. 6, 2019). Tonya filed this current claim nine months later. Tonya's current application for benefits alleged disability beginning May 1, 2007, but was later amended to May 14, 2018. R. 225, 369–72.

administrative review. R. 262–89. ALJ David Lewandowski held a hearing on April 15, 2020, to consider Tonya's claim for SSI, which included testimony from vocational expert Ricky Bradley. R. 220–42. Tonya was represented by counsel at the hearing. On May 12, 2020, the ALJ entered his decision considering Tonya's claims under the familiar five-step process[5] and denying her claim for benefits. R. 38–55.

The ALJ found that Tonya suffered from the severe impairments of cervical spondylosis/discogenic changes; lumbar degenerative disc disease; asthma; chronic obstructive pulmonary disease; carpal tunnel syndrome; obesity; and hidradenitis suppurativa.[6] R. 40. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 42–43. The ALJ concluded that Tonya retained the residual functional capacity ("RFC") to perform light work, except that she can occasionally perform postural activities; occasionally push and pull with her lower extremities; frequently handle and feel; should avoid concentrated exposure to pulmonary irritants; and is expected to be absent from work one day per month. R. 43–44.

The ALJ determined that Tonya was unable to perform her past relevant work as a furniture mover and construction worker, but that she could perform other work that exists in the national economy such as tanning salon attendant, furniture rental clerk or children's attendant.

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Hidradenitis suppurativa is a condition that causes small, painful lumps to form under the skin. The lumps heal slowly, recur, and can lead to tunnels under the skin and scarring. See https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306

R. 54.  Thus, the ALJ concluded that Tonya was not disabled. R. 55.  Tonya appealed and the Appeals Council denied her request for review on November 3, 2020. R. 1–6.

## ANALYSIS

### I.     Medical History[7]

Tonya alleges disability due to pain in her neck, back, legs, and pain and numbness in her hands. Tonya is obese, and her MRIs reflect a mild disc protrusion at L5/S1 and a disc bulge at C5/6 with some foraminal stenosis. R. 736, 746. Tonya has carpal tunnel syndrome in both hands, and suffers from a skin condition that causes skin eruptions.

During the relevant period, Tonya sought treatment for low back pain that radiates to her right leg, neck pain that radiates down her arms, complaints of pain and weakness in her hands, and neuropathy in her feet. R. 505.  Tonya treated with an orthopedist who recommended medication, pain management, and physical therapy. R. 506. Tonya attended pain management visits, and received epidural steroid injections in her neck and low back. R. 494, 735, 994, 1043. Tonya was prescribed physical therapy and referred to a spinal surgeon, who recommended continued pain management services rather than surgery. R. 1044, 1032.

From 2017 through 2020, Tonya's physical examinations showed normal toe and heel walking, tender lumbar region, some pain with flexion and extension, full strength in her lower extremities, and normal upper and lower extremity reflexes. R. 498, 506, 935, 1044. Tonya's straight leg raise was negative in some exams and positive in others. R. 506, 977, 983, 1032, 1037.  Likewise, Tonya's gait was normal at some treatment visits (R. 498, 977, 1037, 1090) and antalgic at other visits (R. 983, 1032).  Tonya consistently complained of pain in her neck and

---

[7] Tonya's appeal focuses solely on her physical impairments; thus, I will not address her mental impairments in this opinion.

4

back, however her exams routinely reflected full range of motion in her neck, back, arms, and legs and full strength in her lower extremities. R. 887, 935, 958, 977.

Tonya was diagnosed with carpal tunnel syndrome in September 2019, and was referred to an orthopedist for surgical evaluation. R. 1086, 1099. Tonya underwent carpal tunnel surgery after the ALJ's decision was issued in this case.

On November 7, 2018, state agency physician Robert McGuffin, M.D., reviewed Tonya's records and determined that she could lift/carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours in an 8-hour workday; stand/walk for 6 hours in an 8-hour workday; frequently stoop and climb ramps/stairs; occasionally kneel, crouch, crawl and climb ladders/ropes and scaffolds. R. 268–70.

On March 7, 2019, state agency physician Jack Hutcheson, M.D., reviewed Tonya's records on reconsideration and agreed with Dr. McGuffin's proposed RFC, except that Dr. Hutcheson limited Tonya's standing and walking to 4 hours in an 8-hour workday. R. 285.

II.     **Obesity**

Tonya argues that the ALJ failed to properly consider her obesity under SSR 02-1p when making his RFC determination. Pl. Mot. Summ. J. at 19–23. The Commissioner counters that the ALJ appropriately considered Tonya's obesity because he found it to be a severe impairment and explained throughout his decision how he considered her obesity. Comm'r Br. Summ. J. pp. 9–12. I agree that the ALJ properly considered Tonya's obesity as required by the social security regulations, and considered the effects of her obesity on her other impairments and functional capacity.

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002).[8] SSR 02-1p recognizes that obesity can cause limitations in all exertional and postural functions. Specifically, "[a]n individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. [Obesity] may also affect ... postural functions, such as climbing, balanc[ing], stooping, and crouching." 2002 WL 34686281, at *6. When assessing a claimant's RFC, the ALJ must consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. The ALJ must assess each case individually to determine the impact obesity has on an individual's functioning when deciding whether the impairment is severe. Id.  However, there is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, No. 6:11cv00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted).

The ALJ may rely on the opinions of physicians who have considered the claimant and her obesity for purposes of satisfying SSR 02–1p. See Martin v. Barnhart, No. 5:10cv102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012); Davis v. Astrue, No. 7:09cv200, 2010 WL 424144 at *5 (W.D. Va. Feb. 3, 2010).  Furthermore, to challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his RFC determination. Matthews v. Astrue, No. 4:08CV00015, 2009 WL 497676, at *4 n.4

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

6

(W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, No. 7:09cv210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Tonya must provide medical evidence establishing functional limitations caused by her obesity that the RFC does not address. Richards, 2012 WL 5465499, at *13.

Tonya alleges that the ALJ did not consider whether her obesity could exacerbate the impact of her impairments; and specifically, failed to consider the impact of her obesity on her ability to sit, stand, maintain a work posture on a sustained basis, her pain and fatigue, and her need to lie down during the day. Pl. Br. Summ. J. pp. 21–23.

The ALJ determined that Tonya's obesity was a severe impairment. R. 40. The ALJ specifically considered Tonya's obesity when determining if her severe impairments met or equaled a listing in step three of the decision, and noted,

> [w]hile obesity is no longer a listed impairment…such impairment should be considered at each step of the sequential evaluation process as appropriate in conjunction with the claimant's impairments (SSR 19-2p). At this step the undersigned considered the claimant's obesity in relation to the other body systems listings, as required by the Ruling. However, the undersigned finds that the medical evidence does not support a finding that the claimant's obesity has reached a level that would cause the other impairments to meet or medically equal a listed impairment.

R. 43.

At step four of the decision, the ALJ reviewed Tonya's medical records, and included multiple references to her BMI, weight and obesity. R. 45–50. The ALJ also specifically discussed Tonya's obesity in his analysis of the evidence and her allegations. When considering Tonya's allegations of back pain and difficulty sitting, standing and walking, he stated,

> [s]he complained of difficulty with sitting, standing, and walking in a physical therapy visit in October 2018, but she stopped attending therapy after this, and the record does not generally show significant issues with ambulation or difficulty performing activities of daily living regarding standing, sitting or walking. The claimant testified she had to lay down to get relief, but the record does not show

7

> her reporting this. The claimant had BMIS in the 40s, indicating morbid obesity. This could contribute to her back pain, but it would not be expected to cause great ambulation issues in itself and the record does not indicate significant lower extremity arthritis issues during the period at issue. The light exertional level, occasional pushing and pulling, and occasional postural activities accommodates the claimant's lumbar degeneration and back pain from obesity.

R. 51. Thus, the ALJ's decision plainly considers the impact of obesity on Tonya's back pain, her ability to sit, stand and walk, and her functional limitations in general.

The ALJ considered the state agency opinions in the record, both of which acknowledged and accounted for Tonya's obesity. The ALJ found both opinions "somewhat persuasive." When considering Dr. Hutcheson's finding that Tonya is limited to 4 hours of standing/walking in an 8-hour day, the ALJ stated, "the record does not show lumbar nerve impingement, or many examination findings. It does not show substantial standing/walking issues from her lumbar spine or obesity, and does not indicate her standing/walking is this limited." R. 52. Thus, the ALJ concluded that despite her impairments and obesity, Tonya can perform light work, which includes sitting up to 6 hours in an 8-hour workday.

The ALJ specifically noted that he considered the cumulative effects of Tonya's obesity and relied upon the medical opinion of Dr. McGuffin who was aware of and considered her obesity. Thus, the ALJ's decision reflects that he considered the combination of Tonya's impairments—including her obesity—in arriving at her RFC.

Tonya acknowledges that she must provide additional obesity-related functional limitations that the ALJ did not consider in his RFC determination. Pl. Br. Summ. J. p. 22. In support, Tonya re-alleges her subjective assertions that "obesity exacerbates [Tonya's] other severe impairments," "causes difficulties in her ability to sit and maintain a work posture on a sustained basis over the course of an eight-hour workday," and "extra weight increases her pain and fatigue, making it more difficult for her to sit or stand long enough to maintain substantial

gainful employment and resulting in the need to lie down during the day." Id. at 22–23. These allegations are not new limitations or medical evidence that the ALJ failed to consider. The ALJ explicitly considered the impact of obesity on Tonya's ability to sit and stand, and her overall ability to maintain substantial gainful employment. Thus, I find that the ALJ properly considered Tonya's obesity in compliance with SSR 02-1p.

### III.    Function by Function

Tonya also asserts that the ALJ failed to perform a function-by-function analysis and to make specific findings whether her impairments would limit her ability to sit, walk, stand, result in the need to lie down during the day, or result in an unacceptable number of absences from work. Pl. Br. Summ. J. p. 24. Tonya argues that the ALJ does not explain how he determined that she would miss one day of work per month. Id. Tonya also asserts that the ALJ failed to assess her ability to sustain work activities for an eight-hour workday. Id. at p. 25.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental

impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. The ALJ reviewed Tonya's allegations that she can sit and stand for only 15 minutes at a time, must lay down during the day, has constant neck pain, and her hands are numb all the time. The ALJ reviewed Tonya's medical records from 2017 through 2020 in detail. After considering the evidence, the ALJ determined that Tonya's medically determinable impairments could reasonably be expected

to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. R. 50.

Importantly, the ALJ explained his analysis of the evidence as to each of Tonya's alleged functional limitations. For example, the ALJ considered Tonya's alleged difficulty with sitting, standing and walking, and determined that that record does not generally show significant issues with ambulation or difficulty performing activities of daily living regarding standing, sitting or walking. R. 51. The ALJ considered Tonya's statement that she had to lay down to get relief, and noted that she did not report that requirement to her medical providers. Id. The ALJ considered Tonya's obesity and found that it did not cause great ambulation issues by itself and the record did not indicate significant lower extremity arthritis issues. Thus, the ALJ concluded that "[t]he light exertional level, occasional pushing and pulling, and occasional postural activities accommodates the claimant's lumbar degermation and back pain from obesity." Id.

The ALJ performed the same function-by-function analysis as to Tonya's neck and upper back pain, complaints of arm numbness, and carpal tunnel syndrome. R. 51. The ALJ noted Tonya's complaints to her providers and findings on exam and concluded, "[t]he light level lifting/carrying and occasional crawling accommodates her cervical degeneration." Id. Likewise, the ALJ considered Tonya's complaints of pain, numbness and dropping things; considered her hand strength and carpal tunnel syndrome; and concluded that "she would have some handling difficulty, but not significant dysfunction…the limitation to frequent handling and feeling accommodates her carpal tunnel syndrome." Id. The ALJ also provided specific analysis of Tonya's pain complaints, her skin issues, and her asthma and respiratory symptoms. R. 51–52.

Contrary to Tonya's argument, the ALJ made specific findings regarding whether her impairments would result in limitations on her ability to sit, walk, stand, result in a need to lie down during the day, or result in an unacceptable number of absences from work. The ALJ did not minimize Tonya's objective findings as Tonya asserts, but instead, the ALJ considered the medical evidence together with all of the evidence in the record. The ALJ provided a detailed and extensive RFC limiting Tonya to a range of light work.

The ALJ is not required to make specific findings related to each of Tonya's subjective assertions. See Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020), (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation.). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Tonya's alleged symptoms, and the medical opinions of record. Tonya's complaints of pain were acknowledged and considered by the ALJ, and the ALJ provided reasoning for his conclusion that despite her pain and symptoms, Tonya could perform a limited range of light work. The ALJ's RFC is, by definition, a determination of what Tonya can perform on a "regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1–2.

Thus, the ALJ provided a narrative discussion explaining his conclusions and the evidence that contradicts the RFC determination, cited specific medical facts and non-medical evidence supporting his conclusion, discussed Tonya's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and described the

maximum amount of each work-related activity that Tonya can perform. As noted above, an ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P.

## IV. Subjective Allegations

Tonya also asserts that the ALJ improperly discounted her complaints of symptoms based on a lack of objective evidence in the record, citing to Arakas v. Commissioner, 983 F.3d 83 (4th Cir. 2020). Pl. Br. Summ. J. p. 27. Tonya is correct that objective evidence is not required to find a claimant disabled. However, that does not require an ALJ to accept without question a claimant's complaints of disabling pain from impairments that do not always have objective markers.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

13

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

In Arakas v. Commissioner, 983 F.3d 83 (4th Cir. 2020), the Court emphasized that a claimant is entitled to rely exclusively on subjective evidence to prove that his symptoms are so continuous and/or so severe that they prevented him from working a full eight-hour day. Id. at 96. Thus, it is improper for an ALJ to require that a claimant's subjective descriptions of his symptoms be supported by objective medical evidence. Id. However, "while an ALJ may not discredit Plaintiff's subjective complaints of 'intensity, persistence, and limiting effects of symptoms *solely* because objective evidence does not substantiate,' she is not required to defer to those subjective complaints 'to the extent they are inconsistent with the available evidence.'" Willa F. v. Kijakazi, No. ADC-20-2659, 2021 WL 5167018, at *7 (D. Md. Nov. 5, 2021) (quoting Arakas, 983 F.3d at 95 (emphasis added); Lavinia R., No. CV SAG-20-1083, 2021 WL 2661509, at *4 (D. Md. June 29, 2021)).

Here, there is extensive objective evidence of Tonya's impairments and associated limitations in the record, thus, Tonya's effort to apply Arakas to this case is unavailing. Tonya's physical impairments are not comparable to conditions such as fibromyalgia, that was at issue in Arakas, and that are not identified through objective testing.

14

The ALJ considered Tonya's allegations that she cannot sit or stand for more than 15 minutes at a time, must lie down two to three times a day for 30 minutes at a time, has numbness in her hands all the time, and her legs go numb when she washes dishes. R. 44–45. The ALJ reviewed Tonya's medical records, her complaints to her treating providers, and her findings on physical exams. R. 45–50. The ALJ determined that Tonya's statements concerning her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 50. The ALJ provided a detailed analysis, as discussed above, and explained his determination that despite her symptoms, Tonya could perform a range of light work. The ALJ properly relied on the objective medical evidence in the record, and the lack of evidence in the record, together with Tonya's reports to her treating providers, her activities of daily living, and the physician opinions in the record. See Walker v. Saul, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W. Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including [c]laimant's daily activities"). Cf. Arakas, 983 F.3d at 97 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.").

Tonya also alleges that the ALJ considered her daily activities without acknowledging the extent to which they were performed. Pl. Br. Summ. J. p. 29. This is not a situation like Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017), where the ALJ overly relied upon minimal daily activities in evaluating the claimant's subjective complaints. Here, the ALJ made minimal references to Tonya's daily activities, noting that "the record does not show great difficulty performing activities of daily living." R. 51. The ALJ relied on upon other, more significant, evidence when assessing Tonya's subjective allegations, as set forth above. The ALJ's opinion

15

Case 7:20-cv-00777-JPJ-RSB     Document 20     Filed 02/07/22     Page 16 of 16
Pageid#: 1279

was thorough and applied the proper legal standard, and I will not re-weigh the evidence. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.) Accordingly, I conclude that the ALJ supported his analysis of Tonya's subjective complaints with substantial evidence.

## **CONCLUSION**

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 7, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge